Rowland v. Rowland.

*Decree unanimously affirmed.*

GEORGE H. ROWLAND et ux., appellants,

*v.*

WESLEY S. ROWLAND, administrator of Mary J. Monfort, deceased, respondent.

1. Where, in a suit brought by the representatives of a deceased person, the testimony of the living defendant concerning conversations and transactions had with the decedent is admitted without objection, it is not in the power of the court afterward to strike it out because its admission is opposed to the statute.

2. The court can strike out testimony so admitted only when its exclusion is demanded by some consideration of public policy.

3. Usury, as a defence, must be clearly proven.

An appeal from a decree in favor of the administrator of Mary J. Monfort, deceased, in a suit brought to foreclose a mortgage given by George H. Rowland and wife to the decedent. The vice-chancellor's opinion is reported in *Monfort* v. *Rowland, 11 Stew. Eq. 181.*

Rowland v. Rowland.

*Mr. Chilion Robbins*, for appellants.

*Mr. Wm. H. Davis*, for respondent.

The opinion of the court was delivered by

REED, J.

The mortgage was dated August 12th, 1881, and was given by the appellants upon property at Asbury Park, Monmouth county, in this state, to secure the payment of the sum of $1,500.

The mortgagee died June 26th, 1882. Her administrator filed the bill in the present cause June 12th, 1883. To the bill an answer was filed setting up usury under the Monmouth county usury act. *Rev. p. 520.* At the taking of the testimony in the cause before the master, the evidence of George H. Rowland was received without objection, although, in all important features, it related to transactions with and statements by the deceased mortgagee.

A motion was afterward made to suppress this part of the testimony, and an order to that effect was made.

This left the defendants' case without any substantial testimony to support their defence, and a final decree was afterward made in favor of the complainant.

The counsel of the appellants attacks this order suppressing the testimony of George H. Rowland, and insists that his testimony, as delivered before the master, should be considered on this appeal. In regard to this contention, I think that there are instances where the court would be clearly justified in striking evidence from the record, although it may have been delivered without objection, and its objectionable character may have been apparent at the time of its delivery. But testimony, to be subjected to such judicial excision, must be such as would be incompetent upon one of the grounds included by legal writers upon evidence among classes of testimony excluded from reasons of public policy. The exclusion of this kind of testimony does not rest upon any consideration of its effect upon the particular litigation in which it is offered. On the contrary, the admission of such testimony may be of incalculable value in eliciting the

truth in the action, but it is, nevertheless, excluded because the mischiefs resulting to the public from the fact that such testimony may be compelled, is supposed to be of more importance than the ascertainment of the truth ·in the particular case.

It is because it involves the violation of the confidence reposed in professional advisers, or the revelation of state secrets, or the disclosure of the confidence of the marriage relation at common law, or the disruption of the protecting secrecy of the jury-room, or the demoralization resulting from indecent disclosures, that it is excluded. It is not because it would be unfair to one of the parties litigant to admit it, for in most instances the hardship is to the other side in excluding it, but it is because the interests of the party most succumb to the policy that insures perfect freedom of communication between client and counsel, as a general means of administering justice, because its exclusion secures the peace and unity of the marriage state, protects the communications between governmental departments, and secures the independence of grand jurors and the stability of verdicts.

Evidence of this kind is under the control of the court, who can, upon its own motion, exclude it, nor will consent of the parties to the action aid its admission, because the state is interested in preserving the secrets of persons other than the parties, and it is only by the consent of all parties to be affected by the disclosure that the fundamental objection to its admission is removed. So, as the law then was relative to the testimony of husband and wife, the case cited by the vice-chancellor in the opinion below (*Barker* v. *Dixie, Lee temp. Hard. 264*), in which the lord chancellor refused to permit a wife to testify against her husband, is within this rule.

So are the cases which hold that an attorney cannot, even by consent of the opposite party, be permitted ·to disclose .a communication made by a client. *25 Alb. L. J. 24.*

But in the case now under consideration I am unable to see that the admission of the supposed testimony was opposed to any public policy.

That parties may be witnesses is now the settled policy of the state. The exception engrafted upon the general competency of

all parties, that where one is dead and is represented in the suit, then the living party shall not be permitted to testify, is only a regulation to secure mutuality in the action itself. The admission of such testimony affects no one but the parties, and none but the parties are interested in the exercise of the power given to exclude this testimony.

It stands upon the same footing of any other testimony which might have been the subject of objection, and which the parties have admitted without objection. Now, the rule is well settled that a party or his counsel cannot sit by and accept the chance of a witness making evidence in his favor, and then, after ascertaining its force, raise, for the first time, an objection to its competency. The only exception to this rule is where the ground for exclusion was not discovered until after the evidence was in. If he knows it, or should know it, at the time the testimony is delivered, the party is presumed to have waived his objection.

The rule in this regard is very clearly stated, and the cases in this state collected in the opinion of Mr. Justice Van Syckel, in the case of *Berryman* v. *Graham, 6 C. E. Gr. 370,* decided in this court.

This rule was applied by the court of appeals in New York, in a case where the evidence of the living party had been given concerning transactions with a deceased party, as in the present case. The referee before whom the cause was tried struck it out. The court after stating the well-settled rule, observed, that if the adverse party desired to object to transactions with the decedent he must do so in season, and not wait till he learns what they are, and then, if they bear unfavorably on his case, move to strike them out. *Quin* v. *Lloyd, 41 N. Y. 349.*

From these considerations I conclude that the testimony of George H. Rowland should be here regarded as standing in the record.

But after an examination of the case of the defendants, which, in my judgment, rests entirely upon his testimony, I think there is an absence of the requisite proof to support the charge of an usurious agreement.

We have only one side of the story, as the only other party to

Rowland v. Rowland.

the arrangement is silenced by death. In this aspect of the case the testimony should be scrutinized with care, and the defendant should be required to make a convincing case before the mortgage which he gave to his sister is declared void. I think that he has failed to prove, convincingly, either that there was an agreement at the time the mortgage was executed, or that money was paid in excess of the legal interest, as interest. The story of Rowland, the defendant, is that his sister had the money afterwards loaned to him, then invested at eight per cent. in Ohio, and that she was willing to bring it to Asbury Park and loan it to him if she could realize the same profit from it; that she followed some correspondence to this effect, by loaning the money to him with the understanding that he should pay eight per cent. for its use.

Now, all evidence of this agreement rests in the detailed recollection of conversations which he says he had with the decedent, and with his statement of the substance of certain letters that passed between them. He says that she wrote to him demanding the eight per cent., and that he replied that it was illegal in this state, but that he would pay it if she insisted upon it, to which she replied that she certainly would so insist. He produces no letters, nor has he called for any of hers, nor is any found among hers, in which there is any written evidence of such a bargain.

That some conversation occurred about the rate per cent., and that the mortgage mentioned that she had been getting eight per cent., and would like to receive as much here, is probable.

But it is in evidence that she was informed that such an arrangement was illegal in New Jersey, and would render void her entire mortgage. The notion of giving her more than six per cent. was opposed by Mrs. Rowland. When the mortgage was made it was for legal interest, and defendants say that she was again warned by the lawyer that eight per cent. interest would be a ground of forfeiture of her money. Now, this was nearly all the money she had in the world. In the face of these repeated warnings that she would, by the extra two per cent., forfeit her right to recover the entire amount, I do not think it probable that she made the agreement to that effect.

---

Rowland v. Rowland.

---

I think that she wished to come to New Jersey, where her family was; that she wished to bring her money with her, and while she would have desired the same interest, if possible, here as there, yet, in the face of the penalty resulting from such an act, I do not think it proven that she made the agreement—that it ever became an understood arrangement that such per cent. should be paid. The payments made on the mortgage do not show such an understanding.

There are offered in evidence three receipts from the mortgagee to the mortgagor. There is one dated March 27th, 1882, for $35 paid on account; another, dated May 5th, 1882, for $10 on account, and another, dated June 26th, 1882, for $25 on account.

Under the first receipt, there is a memorandum in the handwriting of the mortgagee, to this effect:

"These are receipts for six months' interest, from August 12th, 1881, to February 12th, 1882, six per cent."

This, he says, was placed there to mislead his wife, who handled the receipts, and to lead her to believe that he was only paying six per cent. But the receipts, with his explanation, are not inconsistent with the memorandum. On February 12th, 1882, six months' interest was due, amounting to $45. The amount of the two receipts of March and May make up that amount. There was no interest due up to the time of her death, according to the terms of the mortgage, but, as the preceding sums were paid after interest was due, it was, I have no doubt, her understanding that, as she should have need for money, and it was advanced by her brother, the mortgagee, with whom she was living, it should be credited upon account of interest to accrue at the end of the six months.

I think it is as probable that the second $25, paid June 26th, were so paid on account of legal interest to accrue in August following, as it is that it was paid on account of the alleged unpaid two per cent. There were only $15 due for the extra percentage, and here is a payment of $25 on account.

Domestic Telegraph Co. *v.* Metopolitan Telephone Co.

Now, these are all the payments for which there are receipts. Rowland, the defendant, says he made an additional payment of $5, after paying the $10 receipted for on May 5th. But I think this is an after-thought, induced by the fact that the additional $5 would make the two payments equal a half-yearly payment of two per cent.

There is also some evidence that she paid bills, the money for which, it is claimed, she must have got from Rowland. But there is no evidence that she had no pecuniary means except such as existed in the shape of this mortgage. On the contrary, the evidence is that she had some little money beyond the $1,500. She had loaned $50 to the defendants, says Mrs. Rowland, which the husband paid back in New York. Rowland's own story of what he paid and how he paid it, instead of the receipts themselves, is so unsatisfactory that little certainty is to be gained from it. And it is doubtful whether the last of the above payments receipted for may not have been given for money paid on account of this very loan of $50.

The account given of a conversation alleged to have been overheard by the family, is, in my judgment, absolutely worthless as evidence of a contract.

I think that the decree below should be affirmed.

*Decree unanimously affirmed.*